UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 3512  Request from Montenegro for Assistance in a Criminal Matter: Eduard Shirokov | ) ) ) ) ) ) ) ) ) | MISC. NO. _____ |

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this ex parte application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Patricia L. Petty, Senior Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence from witnesses and to take such other action as is necessary to execute a request for assistance in a criminal matter from Montenegro.  In support of this application, the United States asserts:

RELEVANT FACTS

1.      On January 25, 2017, the Ministry of Justice of Montenegro submitted a request for assistance (hereinafter, the "Request") to the United States, pursuant to a multilateral treaty, specifically, the U.N. Convention against Transnational Organized Crime, *opened for signature* Dec. 12, 2000, T.I.A.S. No. 13127, 2225 U.N.T.S. 209 (entered into force for the United States Jan. 1, 2007) (hereinafter, the "Treaty").  As stated in the Request, the Special State Prosecutor's

Office in Montenegro is investigating four criminal offenses, Preparing Acts against the
Constitutional Order and Security of Montenegro, Attempted Assassination of the Highest
Representatives of Montenegro, Establishment of a Criminal Organization, and Attempted
Terrorism, which occurred between on or about September 20, 2016, and October 16, 2016, in
violation of the criminal law of Montenegro, namely, Articles 20, 24, 363, 373, 401a, and 447 of
the Criminal Code of Montenegro. A copy of the applicable law is included as Attachment A to
this application. Under the Treaty, the United States is obligated to render assistance in response
to the Request.

2. According to authorities in Montenegro, in or about late September 2016, two
Russian nationals, Eduard Shirokov ("Shirokov") and Vladimir Popov ("Popov"), established a
criminal organization to commit terrorist acts on the day of Montenegro's Parliamentary
elections -- October 16, 2016. Specifically, according to an informant, on the day of the
elections, members of the criminal organization planned to force their way into the Montenegrin
Parliament, detain the Montenegrin Prime Minister, and declare an electoral victory for the
opposition party. To effectuate the plan, on September 26, 2016, Shirokov and Popov met with
Sasa-Aleksandar Sindelic ("Sindelic") in Moscow and directed him to (1) recruit as many people
as possible in Serbia to travel to Podgorica, Montenegro, on the day of the elections, participate
in a street protest, and forcibly enter the Parliament, and (2) obtain Montenegrin police uniforms,
50 automatic rifles, 50 pistols, and a large quantity of ammunition, which would be used by other
members of the criminal organization to attack Montenegrin security forces.

3. Shortly thereafter, Shirokov and Popov met with Sindelic on several occasions in
Russia and Serbia and gave him at least €200,000 to implement their plan, that is, to recruit as
many people as possible to participate in the coup and obtain police uniforms, firearms, and

2

ammunition.  Sindelic used €23,500 of the funds to recruit people to participate in the coup and

€30,000 of the funds to purchase weapons and ammunition.

4.      Shortly before the elections and the planned coup, the informant tipped off

Montenegrin law enforcement authorities.  As a result, Montenegrin law enforcement authorities

intervened and arrested several members of the criminal organization.  The following day,

Shirokov asked Sindelic to find someone to assassinate the Prime Minister.

5.      Sindelic was subsequently arrested and told Montenegrin authorities, among other

things, that Shirokov sent him $800 via Western Union, that the transfer originated in Moscow,

and that he obtained the money at the main post office in Belgrade, Serbia. Investigation

revealed that the transaction took place sometime around the end of September 2016.

6.      To further the investigation, Montenegrin authorities have asked U.S. authorities

to provide business records from Western Union, located in Englewood, Colorado, relating to the

transfer of the $800 from Moscow to Serbia via Western Union.  Montenegrin authorities have

requested these records to help identify the person or persons who financed the attempted coup

and corroborate Sindelic's statement.1

LEGAL BACKGROUND

The Treaty

7.      A treaty constitutes the law of the land.  U.S. Const. art. VI, cl.2.  The provisions

of a treaty have equal footing with acts of Congress and are binding on the courts.  See Asakura

v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801);

United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001).  To the extent that the

---

1 Montenegrin authorities also have asked U.S. authorities to provide electronic records relating to the
investigation. In connection with that request, on or about February 15, 2017, U.S. authorities filed an
application to obtain the records pursuant to 18 U.S.C. §§ 2703(d) and 3512(a).  The court granted the
application and U.S. authorities issued a subpoena to obtain those records.

provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes

the statute.  Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

8.      The contracting states entered into the Treaty "to promote cooperation to prevent

and combat transnational organized crime more effectively." Article I.  The Treaty obligates the

states, upon request, to provide assistance to each other in criminal investigations and

proceedings involving offenses that are transnational in nature, involve an organized criminal

group, and are punishable by a "maximum deprivation of liberty of at least four years." Articles

2, 3, 18.  Specifically, the Treaty obligates the states to provide assistance in, among other things,

serving documents, taking evidence and statements, and obtaining documents and records,

Article 18(3), and provides that the States shall execute a request in accordance with its domestic

law.  Article 18(17).

18 U.S.C. § 3512

9.      When executing a treaty or non-treaty request for assistance from a foreign

authority, an attorney for the government may file an application to obtain any requisite court

orders under 18 U.S.C. § 3512.  This section authorizes a federal court to issue such orders and

provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of
> Justice, of an Attorney for the Government, a Federal judge may issue such orders
> as may be necessary to execute a request from a foreign authority for assistance in
> the investigation or prosecution of criminal offenses, or in proceedings related to
> the prosecution of criminal offenses, including proceedings regarding forfeiture,
> sentencing, and restitution.

*          *          *

> [A]n application for execution of a request from a foreign authority under this
> section may be filed . . . in the District of Columbia.

*          *          *

4

The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

10.     Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2] This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders which are necessary to execute a foreign request.

11.     An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs, which serves as the "Central Authority" for the United States, has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[3]  Upon such a duly authorized

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were previously executed); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81A and 81B.

application, Section 3512 authorizes a federal judge[4] to issue "such orders as may be necessary

to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for

electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices

under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or

statements and/or the production of documents or other things. See 18 U.S.C. § 3512(a)(1)-

(b)(1). In addition, a federal judge may prescribe any necessary procedures to facilitate the

execution of the request, including any procedures requested by the foreign authority to facilitate

its use of the evidence. See In re Letter of Request from the Crown Prosecution Service of the

United Kingdom, 870 F.2d 686, 693 (D.C. Cir. 1989) (court has discretion in prescribing

procedures to be followed in executing foreign request under 28 U.S.C. § 1782); cf. White v.

National Football League, 41 F.3d 402, 409 (8th Cir. 1994) (court may issue process necessary

to facilitate disposition of matter before it); Fed. R. Crim. P. 57(b).

12. Section 3512 also authorizes any person appointed to direct the taking of

testimony or statements and/or the production of documents or other things to: (1) issue an order

requiring a person to appear and/or produce documents or other things; (2) administer any

necessary oaths; (3) take testimony or statements; and (4) take receipt of documents or other

things. 18 U.S.C. § 3512(b)(2). In ordering a person to appear and/or produce documents or

other things, the person appointed, commonly referred to as the "commissioner," typically uses a

subpoena entitled "Commissioner Subpoena." Any such subpoena or any other order, subject to

subsection (d), may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f).

A copy of a "Commissioner Subpoena" is included as Attachment B.

---

[4] The term "federal judge" includes a magistrate judge. See 18 U.S.C. § 3512(h)(1) and Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

## REQUEST FOR ORDER

13.     The Office of International Affairs has reviewed and authorized the Request, and is executing the Request itself.  Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence from witnesses and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512.  In addition, the Request was submitted by an appropriate "foreign authority," i.e., the Ministry of Justice of Montenegro, the designated Central Authority in Montenegro for requests made pursuant to the Treaty, and seeks assistance in the investigation of four criminal offenses -- Preparing Acts against the Constitutional Order and Security of Montenegro, Attempted Assassination of the Highest Representatives of Montenegro, Establishment of a Criminal Organization, and Attempted Terrorism.  Furthermore, the requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of Western Union records, falls squarely within that contemplated by Section 3512.  Finally, this application was properly filed in the District of Columbia.

14.     This application is being made ex parte, consistent with the United States' practice in its domestic criminal matters.   Both Section 3512 and the Treaty authorize the use of compulsory process in the execution of treaty requests comparable or similar to that used in domestic criminal investigations or prosecutions.  Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a treaty request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients.  This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12

U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. <u>Young v. U.S. Dept. of Justice</u>, 882 F.2d 633, 639 (2d Cir. 1989), <u>cert. denied</u>, 493 U.S. 1072 (1990); <u>In re Letters of Request from the Supreme Court of Hong Kong</u>, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); <u>In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti</u>, 669 F. Supp. 403, 407 (S.D. Fla. 1987).] Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person other than the recipient(s) of the commissioner subpoena(s).

15.    Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Patricia L. Petty, Senior Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner and authorizing the undersigned to take the actions necessary, including the issuance of a commissioner subpoena(s), to obtain the evidence requested in a form consistent with the intended use thereof.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By:    _Mary C. McLaren_
Mary E. McLaren
Trial Attorney
Maryland Bar
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 800
Washington, D.C. 20530

8

(202) 514-0040 telephone
(202) 514-0080 facsimile
Mary.McLaren@usdoj.gov

By: _____

Patricia L. Petty
Senior Trial Attorney
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 800
Washington, D.C. 20530
(202) 514-3655 telephone
(202) 514-0080 facsimile
Patricia.Petty@usdoj.gov